IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

VERNON JACKSON,

                Plaintiff,

      -v-                        Civil Action No.
                                         9:04-CV-0073 (FJS/DEP)

CHERIE FAIRCHILD, *et al.*,

                Defendants.

_____

APPEARANCES:                     OF COUNSEL:

FOR PLAINTIFF:

VERNON JACKSON, *pro se*

FOR DEFENDANTS:

HON. ELIOT SPITZER             SENTA B. SIUDA, ESQ.
Office of Attorney General       Assistant Attorney General
State of New York
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

    Plaintiff Vernon Jackson, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this civil rights action pursuant, *inter alia*, to 42 U.S.C. § 1983 alleging deprivation of his constitutional rights.  In his complaint, plaintiff asserts claims of deliberate indifference to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution, stemming from defendants' alleged failure to allow him access to a knee brace and cane utilized by him at another prison prior to his transfer into the Upstate Correctional Facility ("Upstate"), and their refusal to provide him with physical therapy and other treatment for a knee condition as well as a nebulizer to address his diagnosed asthma.

Currently pending before the court is a motion by the defendants seeking the entry of summary judgment dismissing plaintiff's complaint.  In their motion, defendants assert several grounds for dismissal of all or portions of plaintiff's complaint, arguing, principally, that no reasonable factfinder could conclude either that plaintiff has a serious medical need or that defendants were deliberately indifferent to any such need.  Because I find, as a matter of law, that plaintiff cannot establish either the existence of a serious medical need or defendants' deliberate indifference to such a need, I recommend that defendants' motion be granted.

2

I.     BACKGROUND

_____Plaintiff is, and was at the times relevant to his complaint, a prison

inmate entrusted to the custody of the New York State Department of

Correctional Services ("DOCS").  *See generally* Complaint (Dkt. No. 1).

Between September 22, 2003 and November 21, 2003, plaintiff was

housed within Upstate, which is operated principally as a special housing

unit ("SHU") facility.[1]  *See generally* Complaint (Dkt. No. 1); *see also* Smith

Aff. (Dkt. No. 36) ¶ 12.

Upon his transfer into Upstate from the Southport Correctional

Facility, plaintiff's medical records were reviewed by Cherie Fairchild, a

registered nurse employed at Upstate, ostensibly for purposes of

assessing his medical condition and needs.  Smith Aff. (Dkt. No. 36) ¶ 11.

Those medical records revealed that plaintiff had a history of asthma; had

experienced a torn ligament in his left knee which was surgically repaired

in March of 2003; and had recently undergone surgery for a removal of one

---

[1]      In New York, SHU cells are utilized for segregating prisoners from general
population areas for various reasons including, predominantly, disciplinary purposes.
*Lee v. Coughlin*, 26 F. Supp.2d 615,  618 (S.D.N.Y. 1998) (citing 7 NYCRR pts. 253,
254, and 301).  The conditions typically experienced by inmates confined in an SHU
include two showers per week; one hour of outdoor exercise per day; unlimited legal
visits; one non-legal visit per week; access to counselors; access to sick call; cell study
programs; and access to library books.  *Husbands v. McClellan*, 990 F. Supp. 214, 218
(W.D.N.Y. 1998) (citing 7 NYCRR pt. 304).

or more cysts on his back. *Id.* ¶ 11 & Exh. B, at B-7, 9/22/03 entry. Those records also revealed, significantly, that while at Southport Jackson was allowed the use of knee brace and cane for walking, and was prescribed twice daily nebulizer treatments of unspecified duration to address his asthma. *Id.* ¶ 11 & Exh. B, at B-5, 9/12/03 entry.

Upon his transfer into Upstate, plaintiff's cane and knee brace were confiscated, labeled, and placed in the nursing office. *Id.* ¶ 11 & Exh. B, at B-7, 9/22/03 entry. Those actions, which were apparently consistent with the normal practice at Upstate, were based upon a determination that while confined within an SHU cell, plaintiff would be required to walk only minimally, and as such items such as canes or braces which could be used as weapons against other officers or cellmates should be provided only when he was required to walk distances. Smith Aff. (Dkt. No. 36) ¶ 12. Plaintiff's cane was subsequently made available to him for use when walking distances greater than fifty feet; plaintiff's knee brace, however, was stored with the rest of his property and was not made available to him during his stay at Upstate. *Id.* ¶ 13 & Exh. B, at B-8, 9/23/03 entry. It appears from plaintiff's medical records that upon his entry into Upstate, his nebulizer treatments were discontinued, Complaint (Dkt. No.1) ¶ 11,

4

although his asthma was otherwise treated, including through the use of an

Albuterol inhaler, Naprosyn, Sporanox, Flovent, and Serevest.  *See* Smith

Aff. (Dkt. No. 36) Exh. B, at B-7, 9/22/03 entry; *see also id.* Exh. B, at B-

11, 10/9/03 entry.  Plaintiff maintains that while he was originally assigned

a cell designed for disabled inmates upon his arrival at Upstate,  he was

subsequently moved, on instructions from defendant Fairchild, to one

which was not equipped to accommodate the limitations associated with

his medical conditions.  Complaint (Dkt. No. 1) ¶ 12.

Plaintiff's records reveal that he was seen on a regular basis by

medical personnel while at Upstate.  During several of those visits,

plaintiff's asthma was addressed.  On one of those occasions, occurring

on October 10, 2003, plaintiff complained about not receiving his inhalers.

Smith Aff. (Dkt. No. 36) ¶ 22 & Exh. B, at B-11, 10/10/03 entry (second).

Plaintiff was informed that inhalers had been ordered, and reminded that

he was provided with three inhalers on September 24, 2003.  *Id.*  On

October 16, 2003 Nurse Practitioner Parmer sent Jackson a

memorandum, in which he stated, in pertinent part, as follows:

> You may receive nebulizer treatments for relief of
> asthma as needed, . . . and as medically necessary
> – you need to tell the officer or the nurse if you are
> having an acute asthma attack[.]

5

Smith Aff. (Dkt. No. 36) ¶ 26 & Exh. F.  Later, on October 27, 2003, plaintiff

was seen by Nurse Practitioner William Parmer, who assured Jackson that

nebulizer treatments would be provided as medically necessary for

exacerbations of his asthma, and advised him that in the event of an

asthma attack he was to request emergency sick call for that purpose.[2]

Smith Aff. (Dkt. No. 36) ¶ 29 & Exh. B, at B-13, 10/27/03 entry.  When

examined for his asthma at various times by medical personnel, plaintiff

did not appear to be in distress, and between September 22, 2003 and

November 21, 2003 he experienced no reported asthma attacks.  Smith

Aff. (Dkt. No. 36) ¶ 46 & Exh. B, at B-7-B-21.

The primary focus of plaintiff's complaint appears to surround his

knee condition.  While Jackson complains of the adequacy of physical

therapy provided to him, *see*, *e.g.*, Complaint (Dkt. No. 1) ¶¶ 20-22, his

medical records reveal that on several occasions he refused physical

therapy.  *See*, *e.g.*, Smith Aff. (Dkt. No. 36) ¶ 19 & Exh. E.  The records

also reflect that on October 27, 2003 plaintiff refused to sign a form which

would have authorized an orthopedic consultation regarding his knee.

Smith Aff. (Dkt. No. 36) ¶ 30 & Exh. B, at B-16, 10/27/03 entry; *id.* Exh. G.

---

[2]      On that occasion plaintiff reported that he had experienced no recent
attacks.  Smith Aff. (Dkt. No. 36) ¶ 29 & Exh. B, at B-13, 10/27/03 entry.

6

On October 15, 2003 plaintiff complained to Nurse Fairchild that his knee had become locked.   Complaint (Dkt. No. 1) ¶ 23; Smith Aff. (Dkt. No. 36) ¶ 24 & Exh. B, at B-13, 10/15/03 entry.  According to Nurse Fairchild's entry relating to that date, she was precluded from completing an examination when plaintiff "became very agitated, and became screaming loudly."  *See id.*  Plaintiff did not sign up for sick call again until October 20, 2003.  *See id.*

Plaintiff was seen by Nurse Practitioner Parmer on October 27, 2003, complaining of various conditions including pain in his knees.  Smith Aff. (Dkt. No. 36) ¶ 29 & Exh. B, at B-13, 10/17/03 entry.  Plaintiff terminated that visit, however, before an examination could be completed, stating "I want to go back to my cell."  *See id.*  As a result of that session Nurse Practitioner Parmer recommended an orthopedic consultation to address plaintiff's knee condition.  *See id.*  Once again, however, such a consultation was not scheduled in light of plaintiff's refusal to sign the appropriate authorization forms.  Smith Aff. (Dkt. No. 36) ¶ 30 & Exh. B, at B-16, 10/27/03 entry; *id.* Exh. G.

In his complaint, Jackson also references an occurrence from November 21, 2003 when, as a result of his leg giving out, he fell.

7

Complaint (Dkt. No. 1) ¶ 30.  Following that incident plaintiff was examined

by Lillian Riley, a registered nurse working at the facility, who noted a

superficial abrasion of plaintiff's right lower underarm, but with no swelling

or bruising.  Smith Aff. (Dkt. No. 36) ¶ 42 & Exh. B, at B-21, 11/21/03 entry;

*id.* Exh. H.  An accident report was completed regarding the event, but no

further treatment was deemed warranted at the time.  *Id.*  Plaintiff was

seen on the following day by Kim Perrea, another registered nurse at the

facility, who noted that he did not appear to be in distress and was walking

without difficulty.  *Id.* ¶ 43 & Exh. B, at B-21, 11/22/03 entry.

Plaintiff's medical records reflect many occasions during the relevant

time periods when he signed up for sick call, but then failed to follow the

proper procedures for participation in that program.  Under the prescribed

sick call protocol, inmates within the Upstate SHU requesting to be seen

by a nurse are required to submit a sick call slip.  Smith Aff. (Dkt. No. 36) ¶

16.  The sick call slip form to be utilized advises inmates that

> [a]t approximately 6:15 am, "sick call rounds" will be
> announced by the console officer.  If you have
> signed up for sick call, you are expected to have
> your cell light on, be appropriately dressed and be
> standing by your cell door when the nurse arrives[.]

*Id.*; *see also id.* Exh. C.  Plaintiff's medical records reveal many instances

of plaintiff's failure to comply with this procedure after requesting to be
seen during sick call.  *See*, *e.g.*, Smith Aff. (Dkt. No. 36) Exh. B, at B-9,
9/25/03 entry; *id.* Exh. B, at B-10, 9/30/03 entry; *id.* Exh. B, at B-11,
10/10/03 entry (first); *id.* Exh. B, at B-12, 10/12/03 entry; *id.* Exh. B, at B-
13, 10/20/03 entry; *id.* Exh. B, at B-15, 10/23/03 entry; *id.* Exh. B, at B-15,
10/29/03 entry; *id.* Exh. B, at B-15, 10/30/03 entry; *id.* Exh. B, at B-16,
10/30/03 entry; *id.* Exh. B, at B-16, 10/31/03 entry; *id.* Exh. B, at B-19,
11/16/03 entry; *id.* Exh. B, at B-22, 11/27/03 entry.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on January 21, 2004.  Dkt. No. 1.
Named as defendants in plaintiff's complaint are Cherie Fairchild, Nurse;
W Parmer, Nurse Practitioner; R. A. Girdich, Superintendent of the Upstate
Correctional Facility; Lester Wright, Chief Medical Officer of the DOCS;
Kim Perrea, Nurse; and John Doe, who is otherwise identified only as
"Doctor".  *See id.*  Following the grant of plaintiff's application for leave to
proceed *in forma pauperis*, *see* Dkt. No. 6, summonses were issued and
forwarded to the United States Marshal for service upon the various
defendants.  Since that time, acknowledgment of service forms executed
by defendants Parmer, Fairchild, Girdich, and Perrea have been returned

9

and filed with the court.  Dkt. Nos. 10, 11, 13, 16.  It does not appear from the docket sheet that defendant Wright has ever been served or appeared in the action, nor has John Doe either been identified by the plaintiff, or been served or voluntarily appeared in the action.

On August 4, 2005, following joinder of issue, defendants moved seeking entry of summary judgment dismissing plaintiff's complaint.  Dkt. No. 34.  In their motion, defendants argue that 1) plaintiff's claims against defendants John Doe and Lester Wright should be dismissed, based upon the fact that they were never served in the action; 2) plaintiff's claims of having experienced threats and harassment do not rise to a level of constitutional significance; 3) the record fails to disclose the existence of a constitutionally significant serious medical need; 4) plaintiff has failed to establish any defendant's deliberate indifference to any such serious medical need; and 5) in any event they are entitled to qualified immunity.[3,4]

---

[3]      Defendants also argue that to the extent plaintiff's complaint, when liberally construed, could be deemed to assert a retaliation claim, that cause of action is subject to dismissal as a matter of law.  Based upon my finding that plaintiff's complaint, when liberally construed, could be deemed to assert such a retaliation claim, as well as a deprivation of equal protection, I will address both of those additional, potential claims in this opinion.

[4]      Although not specifically referenced in defendants' memorandum, from an affirmation given by defendants' counsel it appears that they also seek dismissal of plaintiff's claims against defendant Fairchild based upon a representation made by the plaintiff during a telephone conference conducted by the court on November 2, 2004, in

Plaintiff has failed to file any papers in opposition to defendants' motion.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.   <u>DISCUSSION</u>

    A.   <u>Dismissal As Against Defendants Wright and Doe Based Upon Lack of Service</u>

In their motion, defendants first request dismissal of plaintiff's claims against defendants John Doe and Lester Wright. That request is made based upon plaintiff's failure to identify the John Doe defendant, and the fact that neither that party nor defendant Wright, whose identity is known, have been served.

Defendants' request for dismissal as against these defendants is bottomed upon the requirement, imposed by Rule 4(m) of the Federal

---

which he agreed to that dismissal. *See* Siuda Aff. (Dkt. No. 34) ¶¶ 3-4. It is true that at one point plaintiff apparently requested permission to withdraw his claims against defendant Fairchild, and the subject was discussed during the referenced conference conducted by the court. At my directive defendants' counsel apparently prepared a proposed stipulation to effectuate that dismissal and forwarded it to the plaintiff for his consideration. That stipulation, however, was never executed and filed with the court. In light of my recommended disposition regarding the merits of plaintiff's claims, I have not addressed defendants' apparent request that plaintiff's claims against defendant Fairchild be dismissed in light of his verbal agreement.

Rules of Civil Procedure, that service be made within 120 days of issuance

of the summons, absent a court order extending that period.  That rule

provides that

> [i]f service of the summons and complaint is not
> made upon a defendant within 120 days after the
> filing of the complaint, the court . . . shall dismiss
> the action without prejudice as to that defendant or
> direct that service be effected within a specified
> time; provided that if the plaintiff shows good cause
> for the failure, the court shall extend the time for
> service for an appropriate period.

Fed. R. Civ. P. 4(m).[5]  "[W]here good cause is shown, the court has no

choice but to extend the time for service, and the inquiry is ended."

*Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996).

"If, however, good cause does not exist, the court may, in its discretion,

either dismiss the action without prejudice or direct that service be effected

within a specified time."  *Id.* (citing Fed. R. Civ. P. 4(m)); *Romandette v.*

*Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986).

A plaintiff's *pro se* status entitles him or her to a certain degree of

leniency insofar as service of process is concerned; courts generally favor

resolution of a case on its merits, rather than on the basis of a procedural

---

[5]     This court's local rules shorten the time for service from the 120 day
period under Rule 4(m) to sixty days.  *See* N.D.N.Y.L.R. 4.1(b).

technicality.  *Poulakis v. Amtrak*, 139 F.R.D. 107, 109 (N.D. Ill. 1991).

Nonetheless, Rule 4(m) has been held to apply to *pro se* plaintiffs as well

as those who are represented by counsel.  *See Romand v. Zimmerman,*

881 F. Supp. 806, 809 (N.D.N.Y. 1995) (McAvoy, C.J.).

When a plaintiff proceeds *in forma pauperis*, such as is the case in

this instance, the court is obligated to issue the plaintiff's process to the

United States Marshal, who must in turn effect service upon the

defendants, thereby relieving the plaintiff of the burden to serve process

once reasonable steps have been taken to identify for the court the

defendants named in the complaint.  *Byrd v. Stone*, 94 F.3d 217, 219 (6th

Cir. 1996).  That does not mean, however, that a *pro se* plaintiff may stand

idly by upon being notified that efforts by the U.S. Marshal's Service to

serve a particular defendant have been unsuccessful.  *Vandiver v. Martin*,

304 F.Supp.2d 934, 938-43 (E.D. Mich. 2004).

The record in this case reflects that the plaintiff is or reasonably

should be aware of the fact that neither the John Doe defendant nor Lester

Wright have been served or otherwise appeared in the action.  According

to the court's records, no acknowledgment of service form, either executed

or unexecuted, was filed with the court with regard to defendant Wright.

13

Both the answer filed on behalf of the defendants on June 28, 2004, and

their most recent motion, submitted on August 4, 2005, plainly reflect that

they were filed only on behalf of defendants Fairchild, Girdich, Farmer and

Perrea, with no reference to either Wright or the John Doe defendant.

      The importance of identifying and obtaining jurisdiction over the John

Doe defendant was pointedly conveyed to the plaintiff by the court's order

dated March 11, 2004 which provided, in relevant part, as follows:

> Plaintiff is advised that the U.S. Marshals cannot
> effect service on a "John Doe" defendant.  In the
> event that Jackson wishes to pursue a claim
> against this defendant, he shall take reasonable
> steps to ascertain their [sic] his or her identity.
> Plaintiff may then file a motion to amend his
> complaint and seek leave of the Court to add such
> individual, by name, as defendant to this lawsuit.
> Jackson is further advised that if the "John Doe"
> defendant is not timely identified and served, this
> action will be dismissed as against this individual.

*See* Dkt. No. 6, at 2.

      Inasmuch as there is no indication, in the court's records or

otherwise, that defendants Wright and John Doe were served or otherwise

appeared within the required time period, this court has never acquired

jurisdiction over them, and plaintiff's complaint should be dismissed as

against the two defendants, without prejudice.  *See Michelson v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.,* 709 F. Supp. 1279, 1282 (S.D.N.Y.

1989) (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-

45, 66 S. Ct. 442, 245-46 (1946)) (court lacks jurisdiction until defendants

properly served with summons and complaint).

    B.    Significance of Plaintiff's Failure to Oppose Defendants' Motion

    Before turning to the merits of defendants' motion, I must first

address the legal significance, if any, of plaintiff's failure to properly oppose

that motion, and specifically whether that failure automatically entitles

defendants to dismissal based upon their motion.

    This court's rules provide that

> [w]here a properly filed motion is unopposed and the
> Court determines that the moving party has met its
> burden to demonstrate entitlement to the relief requested
> therein, the non-moving party's failure to file or serve any
> papers as required by this Rule shall be deemed as
> consent to the granting or denial of the motion, as the
> case may be, unless good cause is shown.

N.D.N.Y.L.R.7.1(b)(3).  While recognizing that *pro se* plaintiffs are entitled

to special latitude when defending against summary judgment motions

*(see Jemzura v. Public Service Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y.

1997) (McAvoy, C.J.)), courts in this district have found it appropriate to

grant a dispositive motion pursuant to Local Rule 7.1(b)(3) based upon a

15

*pro se* plaintiff's failure to respond. *Robinson v. Delgado*, 96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.); *Cotto v. Senkowski*, 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980 F.Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  As can be seen by the face of Local Rule 7.1(b)(3), however, before summary judgment can be granted – even in the absence of opposition – the court must review the motion to determine whether it is facially meritorious.  *See Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 231-32 (N.D.N.Y. 2000) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp.2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences.  By opting not to submit papers in opposition to their motion, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statement unchallenged.  When filing their motion, defendants complied with the applicable requirement under both this court's rules and the governing Second Circuit case law by providing notice to Jackson of the need to properly oppose the motion, and warning of the

16

potential consequences of not doing so.  *See* Notice under Local Rule 56.2

(Dkt. No. 34).  In large and bolded letters, that notice informed Jackson as

follows: "**THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE**

**DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS**

**MOTION** by filing your own sworn affidavits and other papers as required

by Rule 56(e)."  *See id.* (emphasis in original).  Despite that notice, and

notwithstanding the granting of a request by Jackson for extension of his

time to respond until September 30, 2005, *see* Dkt. No. 37, he has filed no

opposition to the motion.

        Courts in this district have not hesitated to enforce Local Rule

7.1(a)(3) and its predecessor, Local Rule 7.1(f), by deeming facts set forth

in a statement of material facts not in dispute to have been admitted based

upon an opposing party's failure to properly respond to that statement.[6]

*See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at

*1 (N.D.N.Y. Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also*

*Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir.

2000) (discussing district courts' discretion to adopt local rules like

---

        [6]        According to Local Rule 7.1(a)(3), "any facts set forth in the Statement of
Material Facts shall be deemed admitted unless specifically controverted by the
opposing party."  *See* N.D.N.Y.L.R. 7.1(a)(3).

7.1(a)(3)).  Under the circumstances now presented, I recommend that notwithstanding plaintiff's *pro se* status, the court follow the well-established practice of accepting defendants' assertion of facts as set forth in their Local Rule 7.1(a)(3) statement as uncontroverted.[7]

### C.   Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if "it might affect the outcome of the suit under the governing law."

---

[7]      Because of the brevity of the defendants Local Rule 7.1(a)(3) Statement as formatted, the only facts deemed admitted by the plaintiff as a result of his failure to respond to the motion are the relatively uncontroversial assertions that at the relevant times plaintiff was an inmate within the custody of the DOCS, and between September 22, 2003 and November 21, 2003 was housed at Upstate.

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477

U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

D.   Plaintiff's Medical Indifference Claim

At the heart of defendants' motion is their claim that plaintiff's deliberate indifference claims are legally deficient, in light of his inability to establish either the existence of a serious medical need or their deliberate indifference to any such condition.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are "incompatible with the evolving standards

20

of decency that mark the progress of a maturing society."[8]  *Estelle v.*

*Gamble*, 429 U.S. 97, 102-03, 97 S.Ct. 285, 290 (1976) (citations and

internal quotations omitted); *see also Whitley v. Albers*, 475 U.S. 312, 319,

106 S. Ct. 1078, 1084 (1986) (citing, *inter alia*, *Estelle*).

        While the Eighth Amendment "'does not mandate comfortable

prisons'", neither does it not tolerate inhumane ones treatment of

prisoners; thus the conditions of an inmate's confinement, including

medical care, are subject to Eighth Amendment scrutiny.  *Farmer v.*

*Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (quoting

*Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).  To

succeed on a claim alleging that prison conditions, including but not limited

to medical care, violate the Eighth Amendment, a plaintiff must satisfy both

an objective and a subjective requirement – the conditions must be

"sufficiently serious" from an objective point of view, and the plaintiff must

demonstrate that prison officials acted subjectively with "deliberate

indifference".  *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977 (citations and

internal quotations omitted); *see also Leach v. Dufrain*, 103 F. Supp.2d

---

        [8]        That amendment provides that "[e]xcessive bail shall not be required, nor
excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const.
amend. VIII.

542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294,

111 S. Ct. 2321 (1991)); *Waldo v. Goord*, No. 97-CV-1385, 1998 WL

713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (also

citing, *inter alia*, *Wilson* ).

       1.   <u>Serious Medical Need</u>

In order to state a medical indifference claim under the Eighth

Amendment, a plaintiff must allege a deprivation involving a medical need

which is, in objective terms, "'sufficiently serious'". *Hathaway v. Coughlin*,

37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at

2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S.

Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it

presents "'a condition of urgency' that may result in 'degeneration' or

'extreme pain'." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)

(citations omitted).  A serious medical need can also exist where "'failure to

treat a prisoner's condition could result in further significant injury or the

unnecessary and wanton infliction of pain'" – since medical conditions vary

in severity, a decision to leave a condition untreated may or may not be

unconstitutional, depending on the facts*. Harrison v. Barkley*, 219 F.3d

132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*).  Relevant factors

in making this determination include injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'chronic and substantial pain.'"  *Chance*, 43 F.3d at 701 (citation omitted).

As serious medical needs, plaintiff offers his knee condition, lower back pain, and asthma.  *See* Complaint (Dkt. No. 1) Statement of Facts ¶ 10.  None of these needs rises to a level of constitutional significance, based upon the record now before the court.

While an asthma attack which is left untreated can constitute a serious medical need, the mere fact of having been diagnosed with asthma does not suffice to establish such a need.  *See Scott v. Delsignore,* No. 02-CV-029, 2005 WL 425473, at *9 (W.D.N.Y. Feb. 18, 2005); *see also Kearsey v. Williams,* No. 99 Civ. 8646, 2005 WL 2125874, at *4 (S.D.N.Y. Sept. 1, 2005); *Patterson v. Lilley,* No. 02Civ6056, 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003) ("Being an asthmatic (a person susceptible to asthma attacks) is not a condition, in Eighth Amendment parlance, that is severe or "sufficiently serious".  The existence of the condition is distinct from the situation in which an inmate is suffering an actual attack.") (citations omitted).  Plaintiff's medical records reflect that during the time

period in question Jackson's asthma was well controlled, with the aid of medication, and he suffered no attacks during that period.  As such, the record does not support a potential jury finding that plaintiff's asthma constituted a serious medical need during the relevant time period.

For similar reasons, plaintiff's complaints of back and knee pain do not implicate an Eighth Amendment right.  Plaintiff's complaint fails to reveal the requisite urgency or degeneration regarding his knee or lower back pain.  Despite the frequency with which he was seen by prison medical officials over the relevant time, plaintiff did not voice a significant number of concerns regarding pain, nor did he request pain medication beyond simple Ibuprofen and similar, over-the-counter medications.  Indeed, over the entire period plaintiff complained to medical staff about lower back pain only three times, on November 15, 18 and 20, 2003.  See Smith Aff. (Dkt. No. 36) ¶¶ 38-41.  Such temporary and modest complaints of pain do not rise to a level sufficient to establish a serious medical need. See Tatem v. Dolan, No. 302CV1201, 2004 WL 97635, at *3-*4 (D. Conn. Jan. 20, 2004).

Having thoroughly reviewed the record, including entries related to plaintiff's medical care, I conclude that no reasonable factfinder could find

the existence of a serious medical need experienced by the plaintiff during the relevant time period.

### 2.   Deliberate Indifference

Even if plaintiff were able to establish the existence of one or more serious medical needs, to prevail on his Eighth Amendment claim he would also be required to demonstrate deliberate indifference to that need. Deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to inmate health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

It is well established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not provide a basis to find a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992).  Diagnostic techniques and treatments are a "classic example of a

matter for medical judgment", and medical staff is vested with broad discretion to determine what method of diagnosis and/or treatment to provide its patients. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp.2d 261, 264 (W.D.N.Y. 1998).

The record in this case fails to reveal any indifference on the part of the four moving defendants toward plaintiff's medical complaint. Plaintiff's complaint against defendant Girdich appears to surround Jackson's written request to that defendant that he be transferred into another facility. *See* Complaint (Dkt. No. 1) Statement of Facts ¶¶ 19, 22. It is well established that the denial of such a request does not give rise to a cognizable cause of action, since inmates have no constitutional right to be housed in any particular facility. *Olim v. Wakinekona*, 461 U.S. 238, 245-46, 103 S.Ct. 1741, 1745-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532, 2538 (1976). Defendant Girdich is therefore entitled to summary judgment dismissing plaintiff's deliberate indifference claims against him.[9]

---

[9] To the extent that plaintiff's claims against Superintendent Girdich are based upon his position as superintendent of the facility, absent more, those claims are legally deficient since there is no *respondeat superior* liability under 42 U.S.C. § 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.") (citations omitted); *see also*, *e.g.*, *Gill v.*

*Contrast Baumann v. Walsh*, 36 F.Supp.2d 508, 512 (N.D.N.Y. 1999) ("Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.'").

Plaintiff's records reveal that he was seen for treatment by defendant Fairchild on only four occasions during the period relevant to his claims. The only one of those instances which could be construed as not meeting plaintiff's expectations came on October 15, 2003 when, while defendant Fairchild was attempting to assess and advise plaintiff concerning his condition, he became loud and threatening, precluding her from continuing to conduct an examination.  Smith Aff. (Dkt. No. 36) ¶ 24.  Even then, plaintiff was advised by Nurse Fairchild regarding how to care for his medical condition.  In short, the record fails to disclose any deliberate indifference by Nurse Fairchild to plaintiff's condition.

According to the record now before the court, plaintiff was seen only twice by Nurse Practitioner Parmer, another defendant named in plaintiff's

---

*Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (dismissal appropriate where plaintiff does no more than allege that defendant was in charge of prison); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (same).

complaint.  On September 23, 2003 Parmer advised Jackson that he would be permitted to use his cane for walking significant distances, but that his knee brace would be stored with his other property.  Smith Aff. (Dkt. No. 36) ¶ 13.  In view of the conditions within the Upstate SHU, where inmates typically to do very little walking, and the fact that plaintiff was allowed to use his cane when required to walk great distances, defendant Parmer's actions on that date did not constitute deliberate indifference.  On the second occasion, occurring on October 27, 2003, plaintiff terminated his visit to Nurse Practitioner Parmer in the medical unit before any examination could be conducted.  Smith Aff. (Dkt. No. 36) ¶ 29.  Parmer, did, however, recommend an orthopedic consultation for plaintiff's knee pain during that visit, as well as providing him with other advice concerning his various conditions.  *Id.*  Plaintiff nonetheless refused to accept the suggested orthopedic consultation.  *Id.* ¶ 30.  Based upon these circumstances, no reasonable factfinder could conclude that defendant Parmer was deliberately indifferent to plaintiff's medical needs.

Plaintiff's records reflect that he was seen by the fourth defendant named in his complaint appearing in the action, Nurse Perrea, on three occasions over the relevant time period.  On September 24, 2003, Nurse

Perrea removed a dressing from plaintiff's back stemming from the earlier surgery.  At that time plaintiff registered no other medical complaints. Smith Aff. (Dkt. No. 36) ¶ 15.  Nurse Parrea later visited the plaintiff on October 27, 2003 for the purpose of obtaining his signature on the orthopedic consultation form, *Id.* ¶ 30, and additionally saw the plaintiff on November 22, 2003, following his fall on the prior day, prescribing Sudafed and Ibuprofen for his complaints of a headache and sinus congestion, *id.* ¶ 43.  These assertions are insufficient to inculpate defendant Parrea in any alleged deliberate indifference by medical officials at Upstate to the plaintiff's medical records.

In sum, the foregoing readily demonstrates that plaintiff's medical complaints were considered by medical staff at Upstate, and that he received comprehensive treatment for his various medical conditions, including his asthma, knee pain, and lower back pain.  Accordingly, I find that no reasonable factfinder could conclude that defendants were deliberately indifferent to any medical needs, serious or otherwise.  *Pabon v. Goord*, 99 Civ. 5869, 2003 WL 1787268, at *3-*15 (S.D.N.Y. Mar. 28, 2003).

  E. <u>Plaintiff's Claims of Threats and Harassment</u>

Liberally construed, plaintiff's complaint could be considered to assert claims related to threats and harassment allegedly received by him from the defendants.  Specifically, in his complaint plaintiff alleges that defendants Parmer and Perrea "threaten[ed] him with misbehavior reports" on October 27, 2003.  Complaint (Dkt. No. 1) ¶¶ 25, 26.

42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.  *Alnutt v. Cleary*, 913 F.Supp. 160, 165-66 (W.D.N.Y. 1996) (citations omitted).  Thus, mere allegations of verbal abuse do not rise to the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983.  *See Moncrieffe v. Witbeck*, No. 97-CV-253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (allegations that corrections officer laughed at inmate not actionable under section 1983) (citation omitted); *Carpio v. Walker*, No. Civ.A.95CV1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (Pooler, J. & DiBianco, M.J. ) ("verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation").

Because threats and verbal abuse allegedly administered by prison officials does not rise to a level of constitutional significance, I recommend

dismissal of any claims by plaintiff of threats and harassment.

      F.    <u>Retaliation</u>

      Plaintiff's complaint uses the term "retaliation", and refers to the First Amendment, under which such claims typically arise in this setting, including in the portions thereof describing his two causes of action.  I therefore treat defendants' motion as seeking summary dismissal of such a retaliation claim on the merits, as a matter of law.

      In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001).  If the plaintiff carries this burden, the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287, 97

S.Ct. at 576.  If taken for both proper and improper reasons, then, state

action may be upheld if the action would have been taken based on the

proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.

1996) (citations omitted).

As can be seen, evaluation of claims of retaliation is a particularly

fact-laden exercise, since such claims revolve around both the engaging in

protected conduct, as well as establishment of a nexus between that

conduct and the adverse action ultimately taken.  Because plaintiff's

retaliation claims have been alleged in only conclusory form, however, and

are not supported by evidence in the record establishing a nexus between

any protected activity and the adverse actions complained of, I recommend

that defendants' motion for summary judgment dismissing plaintiff's

retaliation claims be granted.  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d

Cir. 1983).

G.    Equal Protection

Plaintiff's complaint could also be regarded as asserting a deprivation

of equal protection.  Jackson's complaint, however, fails to define the

individuals or groups who have received more favorable treatment, and to

show that the distinguishing features were based upon protected criteria.

32

The Equal Protection Clause directs state actors to treat similarly situated people alike.  *See City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985).  To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class.  *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (citing, *inter alia*, *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767 (1987)).  The plaintiff must also show that the disparity in treatment "cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225, 121 S.Ct. 1475 (2001); internal quotation marks omitted).

Because plaintiff has failed to offer any evidence that he was treated differently than other inmates at Upstate because of intentional discrimination directed at an identifiable class, he cannot establish an equal protection violation.  I recommend dismissal of that portion of his complaint as well.

33

## IV.    SUMMARY AND RECOMMENDATION

Plaintiff's claims in this action against defendants Lester Wright and

John Doe are subject to dismissal based upon his failure to arrange to

have them served and the fact that they have not otherwise voluntarily

appeared in the action.  Plaintiff's claims are also subject to dismissal on

the merits.  Addressing his deliberate indifference claims, I find that plaintiff

has failed to establish either the existence of a serious medical need or the

deliberate indifference to any such need on the part of any of the four

named defendants appearing in the action.   Additionally, while plaintiff's

complaint could be liberally construed as asserting claims of

unconstitutional deprivations based upon threats and harassment, of

retaliation, and denial of equal protection, I find that the record does not

support any of those claims, and therefore recommend dismissal of those

causes of action as well.[10]

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion for summary judgment

---

[10]    In view of my recommendation on the merits I do not find it necessary to
address defendants' claim that they are entitled to qualified immunity.  *Saucier v. Katz*,
533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001); *Harhay v. Town of Ellington Bd. of
Ed.*, 323 F.3d 206, 211 (2d Cir. 2003); *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir.
1999) (citing *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996)).

(Dkt. No. 34) dismissing plaintiff's complaint be GRANTED, and that plaintiff's complaint in this action be DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

Dated:      March 8, 2006
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\prisoner\jacksonvernon.wpd

35